R. A. RATCHFORD v. THE CITY OF GASTONIA ET AL.

(Filed 29 April, 1919.)

**Health—Municipal Corporations—Cities and Towns—Ordinances—Surface Privies—Assessments—Liens.**

An ordinance placing surface closets or privies within the corporate limits of the town under the supervision and inspection of the town authorities, and imposing a charge of thirty cents a month upon the owners of the property for cleaning and inspecting them, making it a lien upon the lands, enforceable in the same manner as State, county and municipal taxes, is valid and enforceable under ch. 36, subch. 7, sec. 4, Laws 1917, providing that "cities and towns shall have the power summarily to remove or abate, etc., everything in the city limits, or within a mile of said limits, which is dangerous or prejudicial to the public health; and the expense of such action shall be paid by the person in default, and if not paid shall be a lien upon the land or premises where the trouble arose, and shall be collected as unpaid taxes"; and also comes within the spirit of the preamble to our Constitution that one of its objects is "to promote the general welfare."

APPEAL by plaintiff from *Adams, J.,* at chambers in Gastonia, 2 March, 1919; from GASTON.

This was an application for an injunction against the sale of the lot under an ordinance of Gastonia which prescribed that every surface

closet or privy in the city should be cleaned and inspected under the supervision of the city, and a charge or assessment of thirty (30) cents per month was to be levied or imposed for such work, and was to be collected from the owner of the property, and with the additional provision that on failure to pay such assessment such charge shall be a lien upon the real estate upon which such closet is located. The city of Gastonia advertised a piece of real estate of the plaintiff upon which a closet was situated for dues on such closet and for other dues on closets owned by plaintiff. The restraining order was dissolved, and plaintiff appealed.

*Mangum & Woltz* for plaintiff.
*P. W. Garland* for defendants.

CLARK, C. J. Laws 1917, ch. 36, subch. 7, sec. 4 (a general statute in regard to "cities and towns"), provides as follows: "The governing body, or officer or officers who may be designated for this purpose by said governing body, shall have the power summarily to remove, abate, or remedy, or cause to be removed, abated, or remedied, everything in the city limits, or within a mile of said limits, which is dangerous or prejudicial to the public health; and the expense of such action shall be paid by the person in default, and if not paid, shall be a lien upon the land or premises where the trouble arose, and shall be collected as unpaid taxes."

The plaintiff, R. A. Ratchford, is the owner of eleven such houses which he rents, some to white and some to colored persons, none of whom own property themselves.

Prior to June, 1918, the contractor who had been doing scavenger work for the city of Gastonia had been required to collect pay for the same from the tenants or occupants of such houses, and under an ordinance of the city of Gastonia he was required to clean such surface closets, regardless of whether or not he collected his pay from such tenants; but he had so much difficulty in collecting from many of such tenants that he had reported to the board of aldermen that he could not afford to continue to do such work.

It appears from the affidavit of Dr. C. J. McCombs, the city physician, and it appears to be an established scientific fact, that any surface closet is a nuisance, and that all cases of typhoid fever are a result of having swallowed a germ from human excrement.

It also appears that from 15 July, 1918, until 1 January, 1919, there were forty-four cases of typhoid fever within the limits of the city of Gastonia; that the said board of aldermen, on account of the large number of surface closets within the city, have been confronted with a

serious proposition as to how to take care of the situation. There were so many cases of typhoid fever that it attracted the attention of the State Board of Health, and the Board of Aldermen of Gastonia were desirous to adopt the best and most sanitary regulations for the protection of the public.

On account of the fact that many tenants occupying rented houses are of unsatisfactory character, no small part of them being a floating population, such as the occupants of tenement houses at cotton mills who are continually moving about from one place to another, it was impracticable to obtain men to do this scavenger work who would agree to look alone to the occupants or tenants for their pay, and it appeared that the only system by which they could be obtained to do this work was for the city to become responsible therefor to the man doing the work and to collect for the same from the owners of such houses. In view of this situation the board adopted, in June, 1919, the following ordinance:

*"Cleaning Surface Closets.* Each and every surface closet or privy in the city of Gastonia used in connection with a dwelling shall be cleaned and inspected under the supervision of the city, and a charge or assessment of thirty cents per month is hereby levied and imposed for and on each and every said surface closet for such cleaning and inspection; said charge or assessment shall be paid by the owner of the land or property on which any surface closet shall be located, and shall be due, collectible and payable to the city of Gastonia, at the office of the tax collector, on the first day of each calendar month for and covering the period of the next preceding calendar month. The failure of any person or corporation so charged to pay said charge or assessment when the same shall be due and payable shall subject said person, firm, or corporation to the payment of an additional sum or penalty of 50 per cent of the amount of the charge or assessment due and unpaid; said charge or assessment shall be a lien upon the real estate upon which any surface closet shall be located, which lien shall attach to said real estate at and from the time of the cleaning and inspection of any such surface closet as provided for herein, and shall continue until such charges or assessments, with any penalty and costs which shall accrue thereon, shall be paid: said lien shall be enforceable in the same manner that is provided by the laws of the State for the enforcement of the lien of the State, county, and municipal taxes. This ordinance shall be in full force and effect from and after 1 July, 1918."

It seems that the only question of importance to be considered upon the record in this case is as to the validity of such ordinance.

We think this ordinance is a valid exercise of the power reposed in the town authorities for the protection of the health of the people of

the town, and that it is fully authorized by the powers expressly conferred by sec. 6, subsec. 7, ch. 36, Laws 1917, above recited.

All government is, or should be, established and maintained for the public welfare, whether such government be that of a town or city, county, State, or nation. It is for that purpose that governments are established, as is stated in the great Declaration of American Independence. The Constitution of the United States recites in its Preamble as one of the objects for the establishment of a Federal Union "to promote the general welfare." *"Salus populi suprema lex."* It is for this end that government of all kinds are established and maintained at great expense.

The necessity of sanitation is fully recognized and is becoming of more and more importance with the knowledge which we obtain of the causes of disease and death. It would be impossible to maintain that cleanliness, which is as necessary for the protection of health and life as courts and juries and the administration of justice are to protect life and property, unless this is done by public supervision. The narrowness, or selfishness, or ignorance of one man in not keeping his premises in a cleanly condition would nullify the action of all the other citizens, combined, for that purpose, by turning loose the flies and other insects which may carry the seeds of disease to other homes throughout the city. This general supervision cannot be maintained by collecting the charges for that service from the renter, who may be here today and elsewhere tomorrow. The party responsible is the owner of the premises. The land cannot move. The renter or temporary occupant can do so at will. Therefore the charge is a very proper and necessary one against the property itself, and is authorized by the statute in the same way that the establishment of adequate paving of the sidewalk and streets and of sewerage are thus established for the same reason that the failure of some citizens to pave the sidewalk or streets or to connect with the sewer would destroy to a great extent the benefit of these improvements in the entire town.

The town authorities not only have the power to impose such duty upon the land for the necessary protection of the health of the citizens but they would be derelict in their duty as such officials, and in proper cases liable to indictment for failure to protect the health of the public by such necessary regulation.

Doubtless the time is not far distant when by statute all manufacturing establishments or industries employing more than a certain number of people will be required to institute sewerage in their tenement houses, even when located outside town limits, in order to protect the health of the employees and of the neighborhood as well. In most towns of any size, surface closets are abolished, and sewerage is required.

In view of the advance of medical science and regard for that sanitation which must be universal in order to be at all effective, there must be an extension of the requirements which by experience have been demonstrated as necessary for the protection of the public health. Accordingly the General Assembly of 1919 enacted requirements as to sanitary closets even in the country.

The public health is a matter of importance to the entire neighborhood, and especially to all the inhabitants of a town or city, for the indifference or ignorance or neglect of one man will nullify the precautions taken by all others in that locality. Such ordinance as is here in question is a necessary protection, which will be extended in its scope with the increase of knowledge and can never be diminished. The requirement of sewerage will be better than such ordinance as this which is the minimum.

The enforcement of such regulations as this by an officer appointed by the city directly through its officers and employees is not only more economical but it is the only method of making it efficient. In 28 Cyc., 717, 718, authorities are cited upholding such ordinances. For an interesting discussion of the subject, see *Walker v. Jameson,* 49 Am. St., 222.

Even if there had not been precedents sustaining such authority, the act above cited of 1917 confers the power, and it may be that the authority would exist even without the statute as a necessary inference from the requirement and duty imposed on the town authorities to protect the public health. The only authority relied on to the contrary is *S. v. Hill,* 126 N. C., 1140. That case held that the ordinance could not take from the citizen the right to cleanse his own premises if they became filthy, by reason of the city not having required its scavenger to do the work oftener. This is in the direction of promoting better sanitation and not of forbidding the city to enforce it. The dissenting opinion in that case recognizes this by saying, "I agree with the majority that the best method is to have it (the scavenger work) done directly by the city through its officers and employees," and since then the act of 1917, above cited, fully confers the power and imposes the duty upon the towns and cities of the State. Strange, as it will now seem to us, the opinion states at at that date (1900) there was no public sewerage in Wilmington. Since then there has been great progress in sanitation and recognition of the fact that unless made universal by public supervision it will be defective and inefficient. Filth-producing conditions in the slums, or among the poor, will be carried by flies and other agencies, to all other parts of the town. Small-pox or typhoid among any part of the people of the town is a menace to all the inhabitants thereof.

Affirmed.